Suite 1331 The Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

July 11, 2014

Ms. Marcia M. Waldron, Clerk
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA  19106

>  **Re:  *Washington v. Secretary PA Department of Corrections,* Appeal No. 12-2883**

Dear Ms. Waldron:

Pursuant to the Clerk's Letter of June 4, 2014, Defendant James Washington, by his undersigned counsel, respectfully submits this letter brief to address the impact of *White v. Woodall,* 572 U.S. ___, 134 S. Ct. 1697 (2014) ("*Woodall*").  In *Woodall* the United States Supreme Court held that habeas corpus relief pursuant 28 U.S.C. § 2254(d)(1) is not available to a state prisoner who seeks to extend the reasoning of a prior Supreme Court decision as opposed to applying the holding of a prior Supreme Court decision.

1

*Washington* is not seeking to extend the reasoning of *Bruton v. United States,* 391 U.S. 123 (1968) or its progeny.  Instead, Washington asserts that he is entitled to relief on two grounds that fall squarely within the holdings of *Bruton* and its progeny.

### 1.     The Redacted Statement is Facially Incriminating

Under *Richardson v. Marsh,* 481 U.S. 200 (1987), a co-defendant's statement that is to be read to the jury with a curative instruction must not be "incriminating on its face." *Id.* at 207.  The statement must be "redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. *Richardson* left open the possibility that a statement might be used if the defendant's name "has been replaced with a symbol or neutral pronoun." *Id.* at 211 n.5.  Under *Woodall* it appears that a statement would be permissible even it fell within the possible exception recognized by the *Richardson* Court in its footnote, because reasonable jurists could disagree as to whether this exception should ultimately be recognized.   However, the problem for the Commonwealth in this case is that statement used against Washington is not permissible under either the rule or the sole recognized exception.

In contrast to the statement at issue in *Richardson,* the statement used in this case makes numerous direct "reference[s] to his or her existence." *Id.* For example, the statement includes the following:

Question: Who was driving the car?

Answer:    Someone I know.

App. 268 (Tr. p. 66, lns. 19-21).

*   *   *

Question: How long have you know [sic] the driver of the car you were in.

Answer: For a long time, like ten years.

Question: I'm showing you a photo. Do you recognize this person?

Answer: Yes, that's the driver.

Q. Did he sign a photo of that person.

A. Yes he did.

App. 270 (Tr. p. 72, lns. 16 to 24).

*   *   *

Question: Where does the driver live?

Answer: He was staying with his mom in Hill Creek.

App. 270 (Tr. p. 73, lns. 14-17).

No reasonable jurist could dispute that these statements refer to Washington's "existence," *id.* at 211, nor could any reasonable jurist regard these statements as "neutral." *Id.* at 211, n. 2. The statements are immediately accusatory in relation to Washington. The statements do not merely refer to "someone" but go further and identify "the driver" as "someone I [Waddy] know," and have known for "a long time, like ten years," whom Waddy could personally identify, and whose mother lives in Hill Creek. The statements greatly narrow the field from the millions of potential drivers in the Philadelphia area to a much smaller group of drivers living in the Hill Creek area whom Waddy could identify from a photograph because he had known him for years. The redacted statement is facially incriminating in the same way that the description of the "'red-haired, bearded one-eyed man with a limp'" was deemed to be "facially incriminatory" in *Gray v. Maryland,* 523 U.S. 185, 201 (1998) (citation omitted).

### 2. The Commonwealth Used the Statement in an Improper Manner

In addition to holding in *Bruton, Richardson,* and *Gray* that facially incriminating statements are impermissible, the Court has repeatedly held that a Confrontation Clause violation may result from the misuse of

4

a redacted statement even if the statement itself is not facially incriminating. In *Richardson,* while the statement itself passed muster, the Court remanded the case because the prosecutor during closing argument "linked respondent to the portion of Williams' confession describing his conversation with Martin in the car." *Richardson,* 481 U.S. at 200. The Court quoted the statement by the prosecutor. *Id.* n. 2. The Court remanded the case because the prosecutor had committed "error" "by urging the jury to use William's confession in evaluating respondent's case." 481 U.S. at 211. The decision to remand in *Richardson* was just as much of a part of the holding as the Court's determination that the statement in question was acceptable on its face. In other words, under the holding of *Richardson,* a court must consider the prosecution's conduct in relation to the statement and not just the statement itself.[1]

In *Gray* the Court addressed the use of a redacted statement that, unlike the statement in *Richardson,* included "an obvious blank space . . . or other similarly obvious indications of alteration." *Gray,* 523 U.S. at

---

[1] The Court remanded the case rather than granting relief because defense counsel had failed to object and it was therefore necessary to view this error from the perspective of a claim of ineffective assistance of counsel. *Id.*

5

192. In addition to addressing the text of the statement, the Court referenced to other circumstances in the trial that contributed to the accusatory nature of the statement. The police detective who read the statement into evidence said the word "'deleted'" or "deletion" whenever Gray or his co-defendant Vandingham's name appeared in the statement; *id.* at 189; the state introduced into evidence a copy of the statement that included "blank white spaces," *id.,* and the prosecutor asked the police detective who read the redacted confession: "'after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray; is that correct?'" *Gray,* 523 U.S. at 188-89. In its analysis of whether a *Bruton* violation had occurred, the Court noted that the State had "blatantly link[ed] the defendant to the deleted name . . . by asking whether Gray was arrested on the basis of the information in Bell's confession as soon as the officer had finished reading the redacted statement." *Id*. at 193. The Court further noted that "the follow-up question in this case eliminated all doubt." *Id.* The *Gray* court concluded, "[f]or these reasons, we hold that the confession here at issue, which substituted blanks and the word 'delete' for petitioner's proper name, falls within the class of statements to which Bruton's protections apply." *Id.* at 197. "These reasons," as referenced in the

6

*Gray* Court's decision, plainly include not only the text of the challenged statement but the "blatantly" suggestive manner in which the statement was used at trial. *See id.* at 188-89.

    The circumstances of this case fall squarely within the trial conduct aspects of *Richardson* and *Gray*. During opening statements, the prosecutor specifically and at length discussed Washington's role as "the driver." Joint Appendix ("App.") at 102 (Tr. p. 41, lns. 14-17). The prosecutor pointed Washington out to the jury as follows: "When the defendants got there that day they went in James Washington's brother's car, Mr. Washington, in the middle, and he was the driver, and he stayed in the car with Taylor . . . ." App. 102 (Tr. p. 41, lns. 14-18). The prosecutor also pointed out that at the time of the shooting "James Taylor and James Washington were seated in the car." App. 102 (Tr. P. 42, lns. 12-13).

    The prosecutor went onto tell the jury that "all four of these men knew each other" and that "Jiz, James Washington was a very close friend of Willie Johnson . . . ." App. 103 (Tr. 44, lns. 17-24). (The prosecutor had previously identified Johnson as the shooter.) App. 103 (Tr. p. 43, lns. 18-22). These circumstances explained why "when they

7

needed somebody to drive they got James Washington to do the driving . . . ." *Id.* (Tr. P. 44, ln. 25 to p. 45, ln. 2).

The Commonwealth subsequently called Taylor as a witness, and he proceeded to testify about the personal relationship among the defendants. App. 176-77. Taylor further testified that Washington's role was "Just to drive," "[b]ecause he was the only one with a car." App. 179 (Tr. p. 26, lns. 9-17). According to Taylor, "Jiz was the driver." App. 181 (Tr. p. 31, lns. 9-14).

In the wake of the opening statement and the testimony of Taylor, "[t]he problems with Waddy's confession were immediately obvious before the jury heard the statement . . . ." *Washington v. Secretary Pennsylvania Department of Corrections,* 726 F.3d 471, 479 (3d. Cir. 2013).[2] The Court also recognized, "at the time that confession was introduced there was not the slightest doubt that it would be 'powerfully incriminating.'" *Id.* (quoting *Richardson,* 481 U.S. at 208).[3]

---

[2]The Court in its prior opinion did not discuss the opening statement. However, the entire opening statement is included in the Joint Appendix.

[3] Nothing in the Supreme Court's GVR decision can be read to indicate that the Supreme Court disagreed with the Court's characterization of the statement as obviously identifying Washington

8

Both *Richardson* and *Gray* hold that a Confrontation Clause violation may occur due to the manner in which even a facially neutral statement is used. Where events under the control of the prosecution "blatantly" or "obviously" create a linkage between the statement and the defendant, *Richardson* and *Gray* hold that a constitutional violation occurs. *Gray,* 523 U.S. at 188-89. For example, in *Richardson* the Court observed that "at the time that confession was used [in *Bruton*] there was not the slightest doubt that it would prove 'powerfully incriminating.'" *Richardson,* 481 U.S. at 208. No reasonable jurist after *Richardson* and *Gray* could reasonably conclude that a linkage that this Court has already found to be "immediately obvious, " *Washington,* 726 F.3d at 2013, at the time the statement was used is permissible under *Richardson* or *Gray.* This is particularly true given that the circumstances that make it "immediately obvious" consist of trial events completely within the control of the prosecution, *i.e.*, the opening statement identifying both the role of Washington and his relationship to the other defendants, the crafting of the redactions in the statement

---

as the driver. *Cf. Kenmore v. Roy,* 690 F.3d 639, 641-42 (3d Cir. 2012) ("[i]ssuing a GVR still expresses no position on the merits.").

to point towards Washington, and the calling of Taylor prior to the reading of the statement.

In summary, the statement at issue in this case is not "facially neutral" and the statement was used in an improper manner that created a blatant linkage between the statement and Washington. Because the text and use of the statement clearly run afoul of the holdings of *Bruton, Richardson,* and *Gray,* the Court is not faced with a circumstance in which divergent Supreme Court precedent suggests that the Court could go either way if presented with this case (as was the situation with the self-incrimination issue in *Woodall.*) Because there is no room for such a dispute in this case, the Court should reaffirm its prior decision to grant Washington relief.

                                              Respectfully submitted,

                                              s/Adrian N. Roe

                                              Adrian N. Roe

cc:  Counsel of Record