IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| JAMES WASHINGTON, et al.,<br>Appellee, | :<br>:<br>: |
| v. | : No. 12-2883 |
| | : |
| SEC'Y, PENNSYLVANIA DEP'T<br>OF CORRECTIONS, et al.,<br>Appellants. | :<br>:<br>: |

**SUPPLEMENTAL MEMORANDUM REGARDING *WHITE V. WOODALL***

Last year, this Court affirmed the grant of habeas relief to Washington, a Pennsylvania state prisoner.[1] The United States Supreme Court later vacated the judgment and remanded with instructions for this Court to consider the impact of White v. Woodall, 134 S. Ct. 1697 (2014). Because Woodall precludes habeas relief except where the state decision contradicts the holdings of Supreme Court cases, and because Washington's claim requires (at least) an *extension* of the Court's relevant holdings, this Court should reverse.

**1. Washington's claim goes well beyond Supreme Court precedent.**

Washington argues that his confrontation rights were violated by the introduction of his co-defendant's confession, even though that statement was redacted to replace all references to Washington with facially neutral phrases ("the other guy," "the driver,"

---

[1] Washington v. Sec'y, Pa. Dep't of Corr., 726 F.3d 471 (3d Cir. 2013).

etc.). The only way to conclude that these phrases refer to *Washington*, rather than someone else, is to go beyond the four corners of the confession and use inferences derived from the other evidence in the case.

The Supreme Court has never held that such inferences can create a Confrontation Clause violation. The three relevant Supreme Court cases are all limited to the question of whether the disputed confession is incriminating *on its face*:

- <u>Bruton v. United States</u>, *391 U.S. 123 (1968).* The Court in <u>Bruton</u> held that where a co-defendant's confession identifies the defendant *by name*, admission of that statement violates the defendant's rights under the Confrontation Clause.

- <u>Richardson v. Marsh</u>, *481 U.S. 200 (1987).* <u>Richardson</u> holds that where the co-defendant's statement is redacted to remove all references to the defendant, the Confrontation Clause is not violated.

- <u>Gray v. Maryland</u>, *523 U.S. 185, 196 (1998).* In <u>Gray</u>, the Court held that awkward and artificial deletions – like the words "blank" or "deleted," or letters "X" and "Y" – are improper, because those redactions are obvious *even without reference to other evidence*, that is, "even were the confession the very first item introduced at trial."

None of these cases addressed facially neutral redactions that become incriminating only when linked to other evidence. Indeed, the Supreme Court explicitly

left open that question in Richardson, noting it did not have to decide "the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun."  481 U.S. at 211 n.5.  And while the Court in Gray later addressed part of that unanswered question by disapproving *obvious symbols* of redaction, the Court has still not squarely addressed the use of neutral pronouns – except to suggest (in *dicta*) that such redactions would be appropriate.  Gray, 523 U.S. at 198 (natural-sounding redaction such as "me and a few other guys" might satisfy Confrontation Clause).

In its earlier opinion in this case, this Court observed that "the Supreme Court has expressed no opinion" about "the propriety of redactions that employ neutral pronouns and phrases".  726 F.3d at 476.  Given the law as explained below, and especially in light of Woodall, that is the end of the matter – the claim must be rejected.

**2. The deferential habeas standard of review, as explained in Woodall, prohibits relief on claims that go beyond the clear holdings of the Supreme Court.**

In federal habeas, once a state court has "adjudicated a claim on the merits," relitigation in federal court is barred unless the petitioner can demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as expressed in the holdings of the United States Supreme Court.  28 U.S.C. §2254(d)(1); Harrington v. Richter, 131 S. Ct. 770, 784 (2011).  In Woodall, the Court

clarified that "clearly established federal law" is limited to the holdings of the Court; it does not include *extensions* of Supreme Court holdings to new facts or circumstances, and it does not include *dicta* from the Court's opinions. Because Washington seeks to extend Bruton, Gray, and Richardson beyond their holdings to a different kind of redaction, there is no "clearly established law" governing the dispute here, and the federal courts must defer to the state courts' decision.

    The habeas petitioner in Woodall claimed that he was entitled to a "no adverse inference" instruction in the penalty phase of his trial. The Supreme Court identified the three relevant precedents: in the first, the Court had held that a "no adverse inference" instruction, which derives from the defendant's right against self-incrimination, is required at the guilt phase; in the second, the Court held that the right against self-incrimination applies to sentencing; and the third case applied that rule in one context, holding that the penalty factfinder cannot make any inference about the facts of the crime as a result of the defendant's silence.

    Although one can argue that, given these precedents, it makes sense to require a "no adverse instruction" at the penalty phase, the syllogism is not airtight. Thus, the Supreme Court determined that "[w]e have never directly held that [a specific instruction is required] at a sentencing phase where the Fifth Amendment interests of

4

the defendant are different." Id. at 1703.  The state courts therefore "enjoy broad discretion" in deciding to make this one additional – if slight – extension.  Id. at 1705 (quotation marks and citations omitted).

In addition, the Woodall Court held that the possibility of "fairminded disagreement" about the subject was illustrated by the "diverging approaches to the question" taken by the various Circuits.  Id. at 1703 & n.3 (quotation marks and citations omitted).  The Court also specifically forbade any reliance on the Circuit's own precedents to define what is a reasonable state court decision, or any formulation of the habeas standard which would allow the writ to be granted where the state courts "unreasonably refused to extend" Supreme Court holdings to new circumstances.  The deference standard "does not require state courts to *extend* [Supreme Court] precedent or license federal courts to treat the failure to do so as error."  Id. at 1706.

**3.  Washington's Bruton claim must be rejected under Woodall.**

In order to grant relief to Washington, this Court must find that the Supreme Court has "clearly established" that neutral, natural-sounding redactions can violate the Confrontation Clause through linkage with other evidence.  But this conclusion is not *dictated* by Bruton, Richardson, and Gray, beyond fair-minded disagreement.

5

The Supreme Court has held that admission of statements by non-testifying co-defendants can violate the Constitution if the defendant's name is not removed. The Court has held that *some* redactions fix the problem (removing all references to the defendant) and *other* redactions are insufficient (replacing the defendant's name with obvious deletions like "blank" or "X"). The Court has not squarely held anything about the situation in the middle, where the defendant's name is replaced with a neutral pronoun or phrase. Thus there is no "clearly established" law to apply.

In fact, in *dicta*, the Court has given strong indication that natural redactions are proper. In Gray, the Court explicitly suggested that replacing the names of co-conspirators with phrases like "a few other guys" would fix the problem, and cited with approval two circuit decisions that used this sort of redaction. *Brief for Appellants* at 26-27. In Richardson, the Court drew a clear distinction between statements that are incriminating *on their face* (where the defendant is named, or where the deletions are awkward and obvious), and those that become incriminating only when *linked to other evidence* (where the jury learns who "the other guy" might be through the testimony of other witnesses). 481 U.S. at 208 ("an important distinction between [Bruton and Richardson is that] in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial…").

The Supreme Court has never held that other evidence *must* be taken into account when assessing a redacted statement. The arguments to the contrary are unconvincing.

**1. The "kind" of inference.** This Court held in 2013 that the state court improperly "ignored Gray's admonition to look to the kind rather than the mere fact of inference." 726 F.3d at 476. But the incriminating inference in Gray arose from the four corners of the statement itself – the obvious, awkward deletions – not from other evidence at trial. The Supreme Court has neither held nor suggested that other trial evidence *must* be taken into account when assessing redactions.

**2. The order of evidence**. This Court also held in 2013 that the Bruton issue "turns on what information was available to the trial court before it overruled Washington's objection." 726 F.3d at 479, that is, the timing of evidence is critical. But the Supreme Court has not clearly established such a rule. In fact, Gray stated the opposite: The incriminating nature of the statement should be clear "even were the confession the very first item introduced at trial" – in other words, *without* reference to other evidence. 523 U.S. at 196.[2]

---

[2] In 2013, this Court made much of language in Richardson that "*at the time that confession was introduced* there was not the slightest doubt" that it was incriminating. 481 U.S. at 208 (emphasis added). But there, the Supreme Court was describing the statement in Bruton, not creating a new rule. The reason the statement in Bruton was

**3. The neutrality of the redaction.** Washington argues that the redactions were too specific – that "the driver," "someone I know" and have known for "a long time," from "Hill Creek," are too descriptive of Washington. But once again, none of this had any meaning except as provided by other evidence. The Supreme Court has never offered guidelines for assessing whether a redaction is too descriptive, because it has never held that such redactions can create a <u>Bruton</u> violation in the first place.[3]

In addition, these are new arguments – not made in state court, or in the district court, or even in the original briefing of this appeal – and they are not convincing. *Everyone* involved in the crime had lived in the housing complex known as "Hill Creek," including Romont Waddy, who gave the statement; the conspirators regularly met up with each other and others at "Hill Creek Drive." Hill Creek was a large area

---

improper was that it named the defendant – no inference of any kind was required, which is the point the Court was making. The Supreme Court has never used the *order* of evidence as a basis for a <u>Bruton</u> holding, or to distinguish one case from another.

[3] Sometimes this kind of neutral, role-defined description is the only fair method of redaction. A statement that refers repeatedly to several co-conspirators often cannot be redacted with phrases like "the other guy" or "another person". Simply for clarity's sake – to make it clear that there is more than one cohort, and that each "other guy" is not the same person – it is sometimes necessary to describe each co-conspirator with a different phrase. Otherwise, the redacted statement may simply be incoherent, or the redactions will be obvious in a way that might violate <u>Gray</u>, because no one would actually talk that way. And because the Supreme Court has never addressed a role-defined redaction like "the driver," the state's approval of it is all the more reasonable.

with "numerous" residences, *N.T.* 10/29/01 at 54-55, and James Taylor testified that he had told a number of other people in Hill Creek about the possibility of robbing the dollar store, *N.T.* 10/25/01 at 15-17. That "the driver" lived in "Hill Creek" did not make his identity more clear – he could have been one of the other conspirators, or another friend or acquaintance of Waddy's.

As for the statement's declaration that Waddy had known the driver for "a long time," there was no direct evidence as to how long Waddy and Washington had known each other. On the other hand, the jury did hear from James Taylor that he had known Waddy for more than a decade, but had only known Washington for one year. *N.T.* 10/25/01 at 12, 175-76. Thus the jury could have concluded that Washington had *not* been part of this group for "a long time." And even if there had been evidence on this point, Waddy obviously also knew other Hill Creek residents for "a long time."

**4. Bright line rule.** This Court in 2013 held that the Pennsylvania Supreme Court had created an impermissible "bright line" rule allowing redactions that are incriminating only when linked to other evidence. But this is the same distinction made by courts across the country, see *Brief for Appellant at* 28, and it is taken from Richardson itself. The Supreme Court in Woodall made clear that the reasonableness of

a state court decision is confirmed by a significant number of decisions from other jurisdictions reaching the same conclusion. That is the case here.

**5. The prosecutor's "use" of the confession.** Washington complains that the prosecutor identified "the driver" in his opening statement, and offered other information that could be used to make the statement incriminating. He suggests that because Richardson remanded the issue for further consideration of the prosecutor's arguments, such arguments must always be considered. But in Richardson, the prosecutor affirmatively "sought to undo the effect of the limiting instruction by urging the jury to use [the co-defendant's] confession in evaluating [Richardson's] case." 481 U.S. at 211. Washington's prosecutor did no such thing. He simply described the *other evidence* that incriminated Washington – for example, the testimony of James Taylor that Washington drove the car. The prosecutor may describe properly admitted evidence without violating Bruton.

For the foregoing reasons, this Court should reverse the district court's grant of habeas relief.

Respectfully submitted,

*/s/ Thomas W. Dolgenos*
THOMAS W. DOLGENOS
Chief, Federal Litigation

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | |
|---|---|
| **JAMES WASHINGTON, et al.,** | : |
| **Appellee,** | : |
| | : |
| **v.** | : No. 12-2883 |
| | : |
| **SEC'Y, PENNSYLVANIA DEP'T** | : |
| **OF CORRECTIONS, et al.,** | : |
| **Appellants.** | : |

## **CERTIFICATE OF SERVICE**

I, THOMAS W. DOLGENOS, counsel for appellants, hereby certify that on August 4, 2014, the foregoing memorandum was made available in electronic form via this Court's ECF filing system, to counsel for Appellee James Washington:

> Adrian Roe, Esq.
> Duquesne University School of Law
> 600 Forbes Avenue
> Pittsburgh, PA  15282
> *aroe@roelawoffice.com*
>
> */s/ Thomas W. Dolgenos*
> _____
> THOMAS W. DOLGENOS
> Chief, Federal Litigation